Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IVO JUHANI, BERNARD BURLEW,
KENYON OSTER, CHRISTIAN WILBUR, and
OSIEL SALDIVAR, on behalf of themselves and
all others similarly situated,

                       Plaintiffs,

   -against-

CROWN GROUP HOSPITALITY, LLC, THE
LION RESTAURANT GROUP, LLC d/b/a THE
LION, 24 EAST 81ST STREET
RESTAURANT, LLC d/b/a CROWN, 57 EAST
54TH STREET, LLC d/b/a BILL'S FOOD AND
DRINK, JOHN G. DELUCIE, SEAN
LARGOTTA, AND MARK THOMAS
AMADEI,

                    Defendants.

13 CV 3653 (VEC)

## SETTLEMENT AGREEMENT AND RELEASE

      This Settlement Agreement and Release (the "Agreement") is entered into by and between Ivo Juhani, Bernard Burlew, Kenyon Oster, Christian Wilbur and Osiel Saldivar (collectively hereinafter "Plaintiffs"), on behalf of themselves and of a class of individuals they seek to represent in the above-captioned matter (the "Litigation") and Crown Group Hospitality, LLC, The Lion Restaurant, LLC d/b/a The Lion, 24 East 81st Street Restaurant, LLC d/b/a Crown, 57 East 54th Street, LLC d/b/a Bill's Food and Drink (collectively "Corporate Defendants"), John G. Delucie, Sean Largotta and Mark Thomas Amadei (collectively with Corporate Defendants referred to hereinafter as "Defendants").

## 1.     RECITALS AND BACKGROUND

      WHEREAS, a Collective and Class Action Complaint was filed on May 30, 2013, in which claims were asserted against Defendants under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and New York State law for the alleged failure to pay certain wage, overtime and other monies to Plaintiffs and all other employees who are allegedly similarly situated;

      WHEREAS, the purpose of this Agreement is to settle fully and finally all Released Claims between Plaintiffs and Defendants, including, claims asserted in *Juhani et al. v. Crown Group Hospitality, LLC et al.* No. 13 Civ. 3653 (the "Litigation");

WHEREAS, Defendants deny all of the allegations made by Plaintiffs in the Litigation, and deny any and all liability and damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation;

WHEREAS, in October 2013, the parties agreed to engage in settlement discussions in an effort to resolve the Litigation;

WHEREAS, following protracted settlement negotiations, the parties reached a settlement resulting in this Agreement;

WHEREAS, without admitting or conceding any liability or damages whatsoever and without admitting that wages, overtime and/or other amounts improperly were withheld from any employees, Defendants have agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation;

WHEREAS, Plaintiffs' Counsel has analyzed and evaluated the merits of the claims made against Defendants in the Litigation, and the impact of this Agreement on Plaintiffs and putative members of the collective and class actions, and based upon Plaintiffs' counsel's analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery whatsoever, or might result in a recovery that is less favorable and that would not occur for several years, Plaintiffs' Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interest of the Plaintiffs and the putative members of the collective and class actions;

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

## 1.    DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1    **Agreement.**  "Agreement" means this Settlement Agreement and Release.

1.2    **Acceptance Period.**  "Acceptance Period" means the ninety (90) days that a Class Member has to endorse and cash a Settlement Check after it is mailed.

1.3    **Alternative Minimum Benefit.**  "Alternative Minimum Benefit" means the minimum settlement amount of One Hundred Dollars and Zero Cents ($100.00) for Class Members whose settlement allocation pursuant to Section 3.4 below falls below One Hundred Dollars and Zero Cents ($100.00) or who began working for Defendants on or after July 1, 2013.  This Alternative Minimum Benefit is considered to be 100% liquidated damages and is not subject to tax withholdings.

1.4     **CAFA Notice.**  "CAFA Notice" means the notice to be sent by Defendants to the appropriate federal and state officials pursuant to the requirements of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715(b).

1.5     **Class Counsel.**  "Class Counsel" shall mean D. Maimon Kirschenbaum, Esq. and Denise Schulman, Esq., Joseph & Kirschenbaum LLP, 233 Broadway, 5th Floor, New York, New York 10279, (212) 688-5640, and Louis Pechman, Esq. and Jessica N. Tischler, Esq. of Berke-Weiss & Pechman LLP, 488 Madison Avenue, Suite 1120, New York, New York 10022, (212) 583-9500.

1.6     **Class Members.**  "Class Members" shall mean Named Plaintiffs Ivo Juhani, Bernard Burlew, Kenyon Oster, Christian Wilbur and Osiel Saldivar, Opt-In Plaintiffs Juan M. Camarillo, Annika Sutt, Edgar P. Bermeo, Luis Estevez, Juan Ayala, April Lelanea Fulton, Lindsay Vallejo, Gerardo Juarez-Sanchez, Luis Morocho, Wilmer Santana, Eulalio Juarez-Sanchez, Felix Diaz, Carlos Alvarado, Harvey Woo, Robson Jaremciuc, and Keith Acton and Servers, Runners, Bussers, Bartenders and Barbacks who worked for Corporate Defendants during the Relevant Statutory Period.

1.7     **Court.**  "Court" means the United States District Court for the Southern District of New York, the Honorable Judge Valerie E. Caproni, presiding.

1.8     **Days.**  "Days" means business days if the specified number is less than 10, and calendar days if the specified number is 10 or greater.

1.9     **Defendants.**  "Defendants" shall mean Crown Group Hospitality, LLC, The Lion Restaurant, LLC d/b/a The Lion, 24 East 81st Street Restaurant, LLC d/b/a Crown, 57 East 54th Street, LLC d/b/a Bill's Food and Drink (collectively "Corporate Defendants"), John G. Delucie, Sean Largotta and Mark Thomas Amadei, as well as Corporate Defendants' present and former owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, parents, subsidiaries, affiliates, benefit plans, plan fiduciaries, and all persons acting by, through, under or in concert with any of them.

1.10    **Defendants' Counsel.**  "Defendants' Counsel" shall mean Felice B. Ekelman, Esq., Jason A. Zoldessy, Esq. and Adam S. Gross, Esq. of Jackson Lewis P.C., 666 Third Avenue, New York, New York 10017.

1.11    **Effective Date.**  "Effective Date" of the settlement shall mean the last of the following dates: (a) the date thirty (30) days after the entry of an order by the District Court granting final approval to the Settlement, if there are no appeals; or (b) if there is an appeal of the Court's decision granting final approval, the day after all appeals are finally resolved in favor of final approval.

1.12    **Fairness Hearing.**  "Fairness Hearing" means the hearing before the Court relating to the Motion for Final Approval.

**1.13**   **Final Approval Order.**  "Final Approval Order" means the Order entered by the Court after the Fairness Hearing, approving the terms and conditions of this Agreement.

**1.14**   **Litigation.**  "Litigation" means the above-captioned case.

**1.15**   **Named Plaintiffs.**  "Named Plaintiffs" mean Ivo Juhani, Bernard Burlew, Kenyon Oster, Christian Wilbur and Osiel Saldivar.

**1.16**   **Net Settlement Fund.**  "Net Settlement Fund" means the remainder of the Qualified Settlement Fund (as defined below in Section 1.23) after deductions for: (1) the Settlement Claim Administrator's fees and costs; (2) Court-approved attorneys' fees and costs for Class Counsel; and (3) Court-approved Service Awards to the named Plaintiffs in return for a general release.

**1.17**   **Notice or Notices.**  "Notice" or "Notices" means the Court–approved Notices of Proposed Settlement of Class Action and Collective Action Lawsuit.

**1.18**   **Objector.**  "Objector" means an individual who files an objection to this Agreement, and does not include any individual who opts-out of this Agreement.

**1.19**   **Opt-In Plaintiffs.**  "Opt-In Plaintiffs" mean Juan M. Camarillo, Annika Sutt, Edgar P. Bermeo, Luis Estevez, Juan Ayala, April Lelanea Fulton, Lindsay Vallejo, Gerardo Juarez-Sanchez, Luis Morocho, Wilmer Santana, Eulalio Juarez-Sanchez, Felix Diaz, Carlos Alvarado, Harvey Woo, Robson Jaremciuc, and Keith Acton.

**1.20**   **Opt-out Statement.**  "Opt-out Statement" is a written signed statement that an individual Class Member has decided to opt-out and not be included in this Agreement.

**1.21**   **Participating Class Members.**  "Participating Class Members" are all Class Members who do not submit a valid Opt-out Statement.

**1.22**   **Preliminary Approval Order.**  "Preliminary Approval Order" means the Order entered by the Court preliminarily approving the terms and conditions of this Agreement, and directing the manner and timing of providing Notices to the Class Members.

**1.23**   **Qualified Settlement Fund or QSF.**  "Qualified Settlement Fund" or "QSF" means the account established by the Settlement Claims Administrator for the Settlement Amount paid by The Company.  The QSF will be controlled by the Settlement Claims Administrator subject to the terms of this Agreement and the Court's Orders for Preliminary Approval and Final Approval.  Interest, if any, earned on the QSF will become part of the Net Settlement Fund.

**1.24**   **Released Claims**.  "Released Claims" means all claims asserted, or wage and hour claims that could have been asserted, under federal or state laws by and on behalf of the Class Members in the Litigation.  The Released Claims include all claims under federal or state laws for unpaid regular or overtime wages, any related wage and hour claims, all claims for purported service charges, staffing fees or gratuities, all derivative benefit

claims (both ERISA and non-ERISA benefits), interest on such claims, and attorneys' fees and costs related to such claims through the date of the Preliminary Approval Order.

1.25    **Relevant Statutory Period.**   The "Relevant Statutory Period" refers to the period between May 1, 2010 and June 30, 2014.

1.26    **Settlement Claims Administrator.** The "Settlement Claims Administrator" will be Angeon Group, which was selected by the Parties, subject to approval by the Court, to mail the Notices and administer the calculation, allocation, and distribution of the QSF, though the parties reserve the right to select a different Settlement Claims Administrator upon joint consent.  The Settlement Claims Administrator's fees shall be borne by the QSF.

1.27    **Settlement Amount.**   "Settlement Amount" means Five Hundred and Seventy-Five Thousand Dollars and Zero Cents ($575,000.00), which is the amount Defendants will pay to settle the Litigation as set forth in this Agreement.

1.28    **Settlement Checks.**   "Settlement Checks" means the set of checks issued to Class Members for their share of the Net Settlement Fund calculated in accordance with this Agreement.

## 2.    INITIAL PROCEDURAL ISSUES

2.1    **Binding Agreement.**   This Agreement is a binding agreement and contains all material agreed-upon terms for the parties to seek a full and final settlement of the Litigation.

2.2    **Retention and Responsibilities of the Settlement Claims Administrator.**   The Settlement Claims Administrator will be responsible for the mailing of Notices to Class Members in accordance with the Court's Preliminary Approval Order, distributing Service Awards, calculating the Settlement Checks in accordance with the Court's Final Approval Order, the claims administration process, distribution of the Settlement Checks to Class Members, and providing copies of the Settlement Checks (front and back) signed by the Class Members to Defendant's Counsel.

(A)    The parties will have equal access to the Settlement Claims Administrator, and the Settlement Claims Administrator will provide regular reports to the parties, but no less frequently than every two (2) weeks, regarding the status of the mailing of the Notices to Class Members, the claims administration process, the identity and number of Class Members who object and/or opt-out of the Settlement, and the distribution and redemption of the Settlement Checks.

(B)    Defendants agree to reasonably cooperate with the Settlement Claims Administrator, provide accurate information, to the extent reasonably available, necessary to calculate the Settlement Checks, and reasonably assist the Settlement Claims Administrator in locating Class Members.

**2.3     Preliminary Approval Motion.**

(A)     Following the parties' execution of this Agreement, Plaintiffs' counsel will submit to Defendants' Counsel a draft Motion for Preliminary Settlement Approval memorandum of law, proposed Notice to Class Members, and proposed Order (together the "Preliminary Approval Motion"), and allow Defendants a reasonable opportunity to review the terms of the Preliminary Approval Motion to ensure that it is consistent with this Agreement.

(B)     Class Counsel will file the Preliminary Approval Motion with the Court.  The Preliminary Approval Motion also will seek the setting of date(s) for individuals to opt-out of this Agreement or provide objections to this Agreement, which date will be sixty (60) days from the mailing of Notice to the Class Members, and for a Fairness Hearing for Final Approval of the settlement before the Court at the earliest practicable date.

(C)     In the Preliminary Approval Motion, Class Counsel will inform the Court of the intended process to obtain a "Final Approval Order" and a "Judgment of Dismissal" that will, among other things, seek to: (1) approve the settlement as fair, adequate and reasonable; (2) incorporate the terms of the Release, as described herein; (3) dismiss the Litigation with prejudice; (4) award Class Counsel fees and costs; and (5) award Service Awards to Named Plaintiffs.

(D)     The Parties expect that the Preliminary Approval Motion will not be opposed, but Defendants may respond to the Preliminary Motion to ensure that it is consistent with the terms of this Agreement.  Any responsive papers will be due seven (7) days after Plaintiffs file the Preliminary Approval Motion.

(E)     If the Court denies the Preliminary Approval Motion, unless the parties jointly agree to seek reconsideration of the ruling or to seek Court approval of a renegotiated settlement, the Litigation will resume as if no settlement had been attempted.  Defendants retain the right to contest whether the Litigation should be maintained as a class action or collective action and to contest the merits of the claims being asserted in the Litigation.

(F)     The parties will work together, diligently and in good faith, to expeditiously obtain a Preliminary Approval Order, Final Approval Order, and Final Judgment and Dismissal.

**2.4     Notice to Class Members**

(A)     Within fifteen (15) days of the filing of the Preliminary Approval Order, Defendants will provide the Settlement Claims Administrator, in electronic form, for all Class Members the following information: name, social security number, last known address and dates of employment within the Relevant Statutory Period, as that information exists on file with Defendants.   All information

provided regarding Class Members will be provided to Class Counsel, except for social security numbers.

(B)     Within fifteen (15) days of Defendants' provision of the information set forth in Section 2.4(A) to the Settlement Claims Administrator, the Settlement Claims Administrator will mail to all Class Members, via First Class United States Mail, postage prepaid, the Court–approved Notices of Proposed Settlement of Class and Collective Action Lawsuit and Fairness Hearing.

(C)     The Settlement Claims Administrator will take all reasonable steps to obtain the correct address of any Class Members for whom a Notice is returned by the post office as undeliverable and shall attempt one re-mailing.  The Settlement Claims Administrator will notify Class Counsel and Defendants' Counsel of any Notice sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement.

**2.5     Class Member Opt-outs.**

(A)     Class Members who choose to opt-out of the settlement as set forth in this Agreement must mail via First Class United States Mail, postage prepaid, a written, signed statement to the Settlement Claims Administrator that states he or she is opting out of the settlement, and include his or her name, job title, address, and telephone numbers and states, "I opt out of the Crown Group Hospitality wage and hour settlement" ("Opt-out Statement").

(B)     The end of the time period to opt-out of the settlement ("Opt-out Period") shall be sixty (60) days after the day on which the Settlement Claims Administrator successfully mails a Notice to a Class Member.  Class Members whose first mailing was returned to the Settlement Claims Administrator as undeliverable, will be allowed until the earlier of (a) sixty (60) days after the re-mailing or (b) 90 days after the Settlement Claims Administrator's initial mailing to all Class Members to opt-out from the date of the second mailing.  The Settlement Claims Administrator will not attempt more than two (2) mailings of the Notice to any Class Member, and no mailing shall occur more than sixty (60) days after the first mailing to the Class Member.

(C)     The Settlement Claims Administrator will, within ten (10) days after the last day on which it mails the last Notice to any Class Member, notify Class Counsel and Defendants' Counsel in writing by email and by overnight delivery of the precise date of the end of the Opt-out Period.

(D)     The Settlement Claims Administrator will stamp the postmark date on the original of each Opt-out Statement that it receives and shall serve copies of each Opt-out Statement on Class Counsel and Defendants' Counsel not later than three (3) days after receipt thereof.  The Settlement Claims Administrator will also, within three (3) days of the end of the Opt-out Period, file with the Clerk of Court, stamped

copies of any Opt-out Statements.  The Settlement Claims Administrator will, within 24 hours of the end of the Opt-out Period, send a final list of all Opt-out Statements to Class Counsel and Defendants' Counsel by both email and overnight delivery.  The Settlement Claims Administrator will retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Settlement Claims Administrator is relieved of its duties and responsibilities under this Agreement.

(E)     Any Class Member who does not properly submit an Opt-out Statement pursuant to this Agreement, will be deemed to have accepted the settlement and the terms of this Agreement, and will be issued a Settlement Check, which will contain a release of both their FLSA and New York Labor Law state law claims, and a consent-to-join the Litigation, as set forth in this Agreement.

**2.6     Defendants' Ability to Revoke.**  Defendants have the right to revoke this Agreement if more than 10% of the Class Members timely file an Opt-out Statement.  If Defendants revoke this Agreement, the Litigation will proceed as if there was no attempt at settlement.  In that event, the classes certified for purposes of settlement shall be decertified, and Defendants may contest whether this Litigation should be maintained as a class action or collective action and contest the merits of the claims being asserted by Plaintiffs in the Litigation.

**2.7     Objections to Settlement.**

(A)     Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing.  To be considered, such statement must be mailed to the Settlement Claims Administrator via First-Class United States Mail, postage prepaid, and be received by the Settlement Claims Administrator by a date certain sixty (60) days after the Settlement Claims Administrator mails Notice to such Class Member.  The statement must include all reasons for the objection and any reasons not included in the statement will not be considered.  The statement must also include the name, job title, address, and telephone numbers for the Class Member making the objection.  The Settlement Claims Administrator will stamp the date received on the original and send copies of each objection to Class Counsel and Defendants' Counsel by email and first class mail no later than three (3) days after receipt thereof.  Class Counsel will file the date-stamped objections with their Motion for Final Approval.

(B)     An individual who files objections to the settlement ("Objector") also has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector.  An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections.  An Objector may withdraw his or her objections at any time.  No Class Member may present an objection at the Fairness Hearing based on a reason not stated in his or her written objections.

A Class Member who has submitted an Opt-out Statement may not submit objections to the Settlement.

(C)     The parties may file with the Court written responses to any filed objections no later than three (3) days before the Fairness Hearing.

**2.8     Fairness Hearing and Motion for Final Approval and Dismissal.**

(A)     Plaintiffs' counsel will submit to Defendants Motions for Final Approval of Settlement, Payment of Service Awards and Payment of Plaintiffs' Counsel's Legal Fees memorandum of law and a Proposed Order Approving the Settlement and Dismissing the Litigation with prejudice ("Final Approval Order") and allow Defendants a reasonable opportunity to review the terms of the memorandum of law and Final Approval Order to ensure that they are consistent with this Agreement.     Class Counsel will file the Final Approval Motion and Final Approval Order with the Court.

(B)     At the Fairness Hearing and in the Motion for Final Approval and Dismissal, the parties will request that the Court, among other things: (1) certify the Class for purposes of settlement; (2) approve the settlement and Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely opted out of the settlement; (3) order the Settlement Claims Administrator to distribute Settlement Checks from the Net Settlement Fund to the Class Members and Service Awards, if any, to be paid to the Named Plaintiffs as described in this Agreement; (4) order the attorneys' fees and costs to be paid to Class Counsel from the QSF; (5) order the dismissal with prejudice of all claims asserted in the Litigation and the claims of all Class Members who did not opt-out, subject only to an application for relief under Fed. R. Civ. P. 60(b)(1), or 60(d); (6) order entry of Final Judgment in accordance with this Agreement; and (7) retain jurisdiction as necessary for the purpose of filing consent-to–join forms from the Class Members as set forth in their Settlement Checks and other relief.

(C)     If the Court fails to enter a Final Approval Order in accordance with this Agreement, or if the Final Approval Order is set aside by appeal, the parties will resume the Litigation unless the parties jointly agree to: (1) seek reconsideration or appellate review of the decision denying Final Approval; or (2) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement.

(D)     If any reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement is not approved, the Litigation will proceed as if no settlement had been attempted.

(E)     If the Court fails to enter a Final Approval Order, the Settlement Claims Administrator will provide notice to Class Members that the Agreement did not receive Final Approval and that, as a result, no payments will be made to Class Members under the Agreement.  The content of such notice shall be agreed to by the parties and such notice shall be mailed by the Settlement Claims

Administrator via First Class United States Mail, postage prepaid, to the addresses used by the Settlement Claims Administrator in mailing the Notices.

(F)     The Final Approval Order will order the Settlement Claims Administrator to (1) provide verification to Class Counsel and Defendants' Counsel that it has distributed the Settlement Checks, (2) retain copies of all of the endorsed Settlement Checks with releases, and (3) provide Defendants' Counsel with the original or copies of the endorsed Settlement Checks in accordance with this Agreement and the Court's Final Approval Order.

**2.9    Releases and Consents to Join.**

(A)     A Class Member who does not timely return an Opt-out Statement will be issued Settlement Checks by the Settlement Claims Administrator from the Net Settlement Fund in accordance with the Final Approval Order.

(B)     All Settlement Checks shall contain, on the back of the check, the following limited endorsement:

**"CONSENT TO JOIN AND FINAL RELEASE OF CLAIMS:**

By endorsing this check, I consent to join the FLSA collective action against Defendants styled *Juhani et al. v. Crown Group Hospitality, LLC et al.* No. 13 Civ. 3653 and release Defendants from all wage and hour claims under the Fair Labor Standards Act and the New York Labor Law brought or which could have been brought in the Litigation, including but not limited to minimum wage and overtime wage claims.

_____     Dated:_____
Signature

Any modification or amendment of the above-language by the Class Member at Defendants' discretion may not be accepted, and may void the Settlement Check.

(C)     The Settlement Claims Administrator will mail the Settlement Checks in two installments.  The First Installment ("First Installment"), as defined further in Section 3, will be mailed within fifteen (15) days of the Effective Date (provided that such date is no earlier than December 26, 2014).  The Second Installment ("Second Installment"), as defined further in Section 3, will be mailed on the earlier of (i) six (6) months after the date of mailing of the First Installment and (ii) June 25, 2015, provided that such date is at least fifteen (15) days after the Effective Date.

(D)     Ninety (90) days after the date the First Installment Settlement Checks are mailed, the Settlement Claims Administrator shall provide Defendants an electronic copy of each Settlement Check that has been cashed.  After ninety (90) days from the date the Second Installment Settlement Checks are mailed, the Settlement Claims

Administrator shall provide Defendants an electronic copy of each Settlement Check that has been cashed.  After one hundred eighty (180) days from the date the Second Installment Settlement Checks are mailed, the Settlement Claims Administrator shall provide Defendants an electronic copy of each replacement Settlement Check that has been cashed.

## 3.    SETTLEMENT TERMS

### 3.1    Settlement Amount.

(A)    Defendants agree to pay a Settlement Amount of Five Hundred and Seventy-Five Thousand Dollars and Zero Cents ($575,000.00) which shall fully resolve and satisfy any claim for attorneys' fees and costs approved by the Court, any and all amounts to be paid to Class Members, any Court-approved Service Awards to Named Plaintiffs, any fees and costs associated with investing and liquidating the Qualified Settlement Fund, and the Settlement Claims Administrator's fees and costs.  Defendants will not be required to pay more than Five Hundred and Seventy-Five Thousand Dollars and Zero Cents ($575,000.00) under the terms of this Agreement, except that Defendants shall be responsible for paying, in addition to the Settlement Amount, the employer's share of all payroll taxes.

(B)    Defendants shall cause the First Installment of the Settlement Amount, equal to Two Hundred and Eighty-Seven Thousand and Five Hundred Dollars and Zero Cents ($287,500.00) to be paid to the Settlement Claims Administrator within ten (10) days of the Effective Date (provided that such date is no earlier than December 20, 2014).

(C)    The Settlement Claims Administrator shall deposit the First Installment of the Qualified Settlement Fund entirely into FDIC insured interest bearing accounts and interest from such interest bearing accounts will become part of the Net Settlement Fund and be held by the Settlement Claims Administrator in escrow.

(D)    Defendants shall cause the Second Installment of the Settlement Amount, equal to Two Hundred and Eighty-Seven Thousand and Five Hundred Dollars and Zero Cents ($287,500.00), to be paid to the Settlement Claims Administrator (i) within six months and 10 days following the Effective Date or (ii) by June 20, 2015 (provided that such date is at least 10 days following the Effective Date), whichever is earlier.

(E)    The Settlement Claims Administrator shall deposit the Second Installment of the Qualified Settlement Fund entirely into FDIC insured interest bearing accounts and interest from such interest bearing accounts will become part of the Net Settlement Fund and be held by the Settlement Claims Administrator in escrow.

(F)    Class Members will have ninety (90) days from the date of the mailing of the Settlement Checks to cash their Settlement Checks.  Class Members shall have an

additional ninety (90) days to request replacement checks.  All replacement checks shall be valid for forty-five (45) days.

(G)   Any uncashed Settlement Checks or Service Awards and all amounts remaining in the QSF the day after (1) the time for Class Members to request replacement checks has expired and (2) all replacement checks have been cashed or voided will be donated to the Children's Defense Fund.

**3.2   Settlement Amounts Payable as Attorneys' Fees and Costs.**

(A)   At the Fairness Hearing and in the Motion for Final Approval, Class Counsel will petition the Court for an award of attorneys' fees of no more than 33 1/3 % of the Settlement Amount, and for reimbursement of their actual litigation costs and expenses to be paid from the QSF.  After depositing the Settlement Amount with the Settlement Claims Administrator for the QSF, Defendants shall have no additional liability for Class Counsel's attorneys' fees and costs.

(B)   The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval.  Any fees or costs sought by Class Counsel but not approved by the Court shall revert to the Net Settlement Fund.

(C)   The attorneys' fees and costs shall be paid from the QSF in two installments at the time the payments to Participating Class Members are mailed.

**3.3   Service Awards and Other Payments to Named Plaintiffs.**

(A)   In return for services rendered to the Class Members, at the Fairness Hearing, Named Plaintiffs will apply to the Court to receive no more than Two Thousand Five Hundred Dollars and Zero Cents ($2,500.00) each as a Service Award from the QSF.

(B)   The outcome of the Court's ruling on the application for Service Awards will not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval or for Final Judgment and Dismissal.  Should all or part of any Service Award sought not be approved by the Court, the sum shall revert to the Net Settlement Fund.

(C)   Named Plaintiffs agree to the general release in Section 4.1(C) in consideration for receipt of the Service Award, if any, and their respective share of the QSF.

**3.4   Net Settlement Fund and Allocation to Class Members.**

(A)   The allocation to Participating Class Members for Settlement Checks will be made from the remainder of the Qualified Settlement Fund after deductions for: (1) the Settlement Claims Administrator's fees and costs; (2) Court-approved

attorneys' fees and costs for Class Counsel; (3) Court-approved Service Awards to Named Plaintiffs; and (4) any fees associated with establishing, investing, or liquidating the Settlement Fund.

(B)     A Participating Class Member's proportionate share of the Net Settlement Fund will be determined by the Settlement Claims Administrator pursuant to the following:

    (1)     A Participating Class Member's proportionate share of the Net Settlement Fund shall be determined by the Settlement Claims Administrator pursuant to the formulas agreed upon by the Parties;

    (2)     Notwithstanding the formulas agreed upon by the Parties, no Participating Class Member will be awarded a payment that is less than the Alternative Minimum Benefit, which equals $100;

    (3)     Participating Class Members who started working for Defendants on or after July 1, 2013 will receive the Alternative Minimum Benefit;

    (4)     After deducting the Alternative Minimum Benefits, the remainder of the Net Settlement Fund ("NSF Remainder") shall be paid according to the following formula: (i) compute the total number of workweeks in which all Participating Class Members worked from May 1, 2010 through July 1, 2013; (ii) divide the total number of workweeks worked by each Participating Class Member by the total number of workweeks worked by all Participating Class Members; (iii) multiply the amount derived in (ii) by the NSF Remainder to compute the Participating Class Member's Staffing Fee Amount.

    (5)     Each Participating Class Member will receive the greater of (1) the Alternative Minimum Benefit or (2) his or her Staffing Fee Amount.

## 3.5     Tax Characterization.

(A)     Settlement Checks paid to Class Members will be allocated 50% to W-2 wage payments and 50% to 1099 non-wage payments for interest and liquidated damages.  Any Service Awards will be considered 1099 non-wage income.  Any Class Member who is receiving an Alternative Minimum Benefit payment shall have 100% of their settlement allocated to 1099 non-wage income. All wage payments to Class Members shall be subject to applicable withholding taxes.

(B)     The Settlement Claims Administrator is responsible for issuing and filing appropriate forms associated with payments of any amounts to Class Members, including, but not limited to, issuing the W-2 and 1099 Forms for all amounts paid to the Class Members.

## 4.    RELEASE

### 4.1   Release of Claims.

(A)    By operation of the entry of the Judgment and Final Approval, except as to such rights or claims as may be created by this Agreement, each individual Class Member who does not timely opt-out pursuant to this Agreement forever and fully releases Crown Group Hospitality, LLC, The Lion Restaurant, LLC d/b/a The Lion, 24 East 81st Street Restaurant, LLC d/b/a Crown, 57 East 54th Street, LLC d/b/a Bill's Food and Drink (collectively "Corporate Defendants"), John G. Delucie, Sean Largotta and Mark Thomas Amadei, as well as their owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, insurers, reinsures, parents, subsidiaries, affiliates, benefit plans, plan fiduciaries, and/or administrators, and all persons acting by, through, under or in concert with any of them, from all claims asserted, or wage and hour claims that could have been asserted, under federal or state laws by and on behalf of the Class Members in the Litigation.  The Released Claims include all claims under federal or New York state laws for regular or overtime wages, any related wage and hour claims, all claims for service charges, staffing fees, administrative fees and gratuities, all related derivative benefit claims (both ERISA and non-ERISA benefits), interest on such claims, and attorneys' fees and costs related to such claims through the date this Settlement Agreement and Release is executed by all parties.

(B)    Except as provided in this Agreement, Class Counsel and Named Plaintiffs, on behalf of the Class Members and each individual Class Member, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or they may have against Defendants for attorneys' fees or costs associated with Class Counsel's representation of the Class Members.  Class Counsel further understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees and costs associated with Class Counsel's representation in the Litigation.

(C)    In addition to the waiver and release contained in Sections 4.1(A)-(B) above, and in consideration for the payment(s) received under Section 3.1(A) as well as Section 3.3(A), Named Plaintiffs, their heirs, executors, administrators, successors and assigns, voluntarily release and forever discharge Defendants, and any of their owners, subsidiaries, divisions, affiliated entities, agents, officers, principals, trustees, administrators, executors, attorneys, employees, former employees, insurers, predecessors, successors and assigns, both individually and in their official capacities (collectively "Releasees") of and from any actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, judgments, obligations, union grievances, claims, charges, complaints, appeals and demands whatsoever, in law or equity, which they may have against Releasees as of the date of execution of this Agreement, whether known or unknown, asserted or

unasserted, including, but not limited to, any alleged violation of: Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the Civil Rights Act of 1991, Pub. L. No. 102-166, Sections 1981 through 1988 of Title 42 of the United States Code, 42 U.S.C. §§ 1981-1988; the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq.; the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 et seq.; the Immigration Reform and Control Act, as amended; the Workers Adjustment Retraining Notification Act, as amended; the Family and Medical Leave Act; the New York City Administrative Code; the New York State Human Rights Law, New York Executive Law § 290 et seq.; the New York Civil Rights Law, New York Civil Rights Law § 1 et seq.; Article 6 of the New York Labor Law, New York Labor Law § 190 et seq.; the New York occupational safety and health laws; any other federal, state, city or local human rights, civil rights, wage-hour, wage-payment, pension, employee benefits, labor or other laws, rules, regulations and/or guidelines, constitutions or ordinances; any contract (whether oral or written, express or implied) or tort laws; any claim arising under the common law; any other claim for unpaid wages, employment discrimination, retaliation, wrongful termination, constructive discharge, pain and suffering, mental anguish, intentional and/or negligent infliction of emotional distress; any claim for costs, fees, or other expenses, including attorneys' fees or any other action against Releasees, based upon any conduct occurring up to and including the date of Plaintiffs' execution of this Agreement.

**4.2    Denial of Liability & Confidentiality.**

(A)    Defendants have agreed to the terms of this Agreement without in any way acknowledging any fault or liability, and with the understanding that terms have been reached because this settlement will avoid the further expense and disruption of Defendants' business due to the pendency and expense of litigation.  Nothing in this Agreement shall be deemed or used as an admission of liability by Defendants, or as an admission that a class should be certified for any purpose other than settlement purposes.

(B)    No Party shall make any statements to the media relative to this Settlement.  Class Counsel has agreed not to use the Litigation as a marketing tool or for promotional purposes in any manner.  This Settlement Agreement and Release and the Motions for Preliminary Approval and Final Approval of Settlement shall not be publicized by the parties or their counsel.  Class Counsel agrees to remove all references to the Litigation, if any, from their websites.

(C)    Named Plaintiffs will be advised that the terms of the Agreement are not to be publicized in any manner.

**5.    INTERPRETATION AND ENFORCEMENT**

**5.1    Cooperation Between the Parties; Further Acts.**    The parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms.  Each party, upon the request of any other

party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

5.2     **No Assignment.**  Class Counsel and Named Plaintiffs, on behalf of the individual Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

5.3     **Entire Agreement.**  This Agreement constitutes the entire agreement between the parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the parties shall be deemed merged into this Agreement.

5.4     **Binding Effect.**  This Agreement shall be binding upon the parties and, with respect to Named Plaintiffs and all Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

5.5     **Arms' Length Transaction; Materiality of Terms.**  The parties have negotiated all the terms and conditions of this Agreement at arms' length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the parties in entering into this Agreement, unless otherwise expressly stated.

5.6     **Captions.**  The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

5.7     **Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

5.8     **Blue Penciling.**  If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

5.9     **Governing Law.**  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

5.10    **Continuing Jurisdiction.**  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.  The Court shall not have jurisdiction or authority to modify the terms of the Agreement or to increase Defendants' payment obligations hereunder.

**5.11    Waivers, etc. to Be in Writing.**  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**5.12    When Agreement Becomes Effective; Counterparts.**  This Agreement shall become effective upon its execution.  The parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all parties had signed the same instrument.

**5.13    Signatures of Named Plaintiffs.**  This Agreement is valid and binding if signed by the individual Defendants, Corporate Defendants' authorized representatives and by the Named Plaintiffs.

**5.14    Facsimile and Email Signatures.**  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**HAVING ELECTED TO EXECUTE THIS AGREEMENT AND TO FULFILL THE PROMISES SET FORTH HEREIN AND TO RECEIVE THEREBY THE SETTLEMENT SUMS AND OTHER CONSIDERATION IN SECTION "3" AND OTHER VOLUNTARY BENEFITS SET FORTH IN THIS AGREEMENT, NAMED PLAINTIFFS FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION AND CONSULTATION WITH THEIR ATTORNEYS, ENTER INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS THEY HAVE OR MIGHT HAVE AGAINST RELEASEES.**

**WE AGREE TO THESE TERMS.**

**I AFFIRM THAT THE MEANING, EFFECT AND TERMS OF THIS SETTLEMENT HAVE BEEN FULLY EXPLAINED TO ME.**

IVO JUHANI

8-14-14
Date

By: _____
Ivo Juhani

**I AFFIRM THAT THE MEANING, EFFECT AND TERMS OF THIS SETTLEMENT HAVE BEEN FULLY EXPLAINED TO ME.**

BERNARD BURLEW

8-11-14
Date

By: _____
Bernard Burlew

**I AFFIRM THAT THE MEANING, EFFECT AND TERMS OF THIS SETTLEMENT HAVE BEEN FULLY EXPLAINED TO ME.**

KENYON OSTER

8/12/14
Date

By: _____
Kenyon Oster

**I AFFIRM THAT THE MEANING, EFFECT AND TERMS OF THIS SETTLEMENT HAVE BEEN FULLY EXPLAINED TO ME.**

CHRISTIAN WILBUR

8/12/14
Date

By: _____
Christian Wilbur

18 of 20

**I AFFIRM THAT THE MEANING, EFFECT AND TERMS OF THIS SETTLEMENT HAVE BEEN FULLY EXPLAINED TO ME.**

OSIEL SALDIVAR

08 - 11 - 2014

By: _____

Date

Osiel Saldivar

CROWN GROUP HOSPITALITY, LLC

_____    By: _____

Date                   Name :

THE LION RESTAURANT GROUP, LLC d/b/a THE LION

_____    By: _____

Date                   Name :

24 EAST 81ST STREET RESTAURANT, LLC d/b/a CROWN

_____    By: _____

Date                   Name :

57 EAST 54TH STREET RESTAURANT, LLC d/b/a BILL'S FOOD AND DRINK

_____    By: _____

Date                   Name :

I AFFIRM THAT THE MEANING, EFFECT AND TERMS OF THIS SETTLEMENT
HAVE BEEN FULLY EXPLAINED TO ME.

OSIEL SALDIVAR

_____          By: _____
Date                                 Osiel Saldivar


CROWN GROUP HOSPITALITY, LLC

08 | 18 | 2014                  By: _____
Date                                 Name : JOHN DELUCIÉ


THE LION RESTAURANT GROUP, LLC d/b/a
THE LION

08 | 18 | 2014                  By: _____
Date                                 Name : JOHN DELUCIÉ


24 EAST 81ST STREET RESTAURANT, LLC d/b/a
CROWN

08 | 18 | 2014                  By: _____
Date                                 Name : JOHN DELUCIÉ


57 EAST 54TH STREET RESTAURANT, LLC d/b/a
BILL'S FOOD AND DRINK

08 | 18 | 2014                  By: _____
Date                                 Name : JOHN DELUCIÉ

JOHN G. DELUCIE

08 | 08 | 2014
Date

By: _____
John G. Delucie

SEAN LARGOTTA

08 | 12 | 2014
Date

By: _____
Sean Largotta

MARK THOMAS AMADEI

8 | 8 | 2014
Date

By: _____
Mark Thomas Amadei

4825-8565-1228, v. 1